## Ruehl v. County of Bucks

*William T. Renz*, for plaintiffs.
*Martin J. King*, for Bucks County Board of Assessment.

GARB,*J.*, January 13, 1983—This is an action for a declaratory judgment as in the nature of a class action. The class of plaintiffs consists of all property owners who covenanted with the county for favorable property assessments under and pursuant to the Act of January 13, 1966, P.L. 1292, as amended by the Act of October 26, 1972, P.L. 1030, 16 P.S. §11941 et seq., hereinafter referred to as Act 515, and then renegotiated those agreements under and pursuant to §10 of the Act of December 19, 1974, P.L. 973, 72 P.S. §5490.1 et seq., hereinafter referred to as Act 319. The controversy arose, apparently, when petitioners, who had previously covenanted with the county under Act 515, made application for preferential tax assessment under Act 319 and were required by the county solicitor to execute a certain document or agreement in order to effectuate the preferential assessment. Petitioners object to the particular document or agreement submitted by the county solicitor on the grounds that it allegedly misstates the application of the rollback provisions of Act 319 and further that the county solicitor is without power to impose any requirements whatsoever.

Although the issues are somewhat shadowy and the dispute amorphous, we believe, but not without some hesitation, after closely studying the plead-

ings and briefs and then ordering the matter on oral argument sua sponte, that we understand the issues. We believe that the relief sought in this declaratory judgment action verges very close on an advisory opinion regarding matters not yet in dispute and which can, and probably more gracefully, be resolved in other legal postures. However, the relief afforded by an action in declaratory judgment has now been construed as not extraordinary in nature but rather as remedial intended to be liberally construed and administered for the purpose of settling uncertainty and insecurity with respect to rights, status and other legal relations. See Friestad v. Travelers Indemnity Co., 452 Pa. 417, 306 A. 2d 295 (1973). As such, but barely so, we believe that this dispute is appropriate for declaratory relief to the extent that we are able so to declare.

It is our perception that petitioners maintain that they qualify for preferential tax assessment under Act 319 and, therefore, are entitled to same, and as a result that their property must bear two separate assessments, one under Act 515 and another under Act 319. We believe that this contention is ill founded.

Petitioners argue strenuously that these two acts are not inconsistent or mutually exclusive. With that we agree. From that, however, petitioners make the quantum leap that once they have covenanted under Act 515 for a favorable tax assessment reflecting the fair market value of their land as restricted by the covenant, they maintain that assessment even though they opt to apply for and receive a preferential tax assessment under Act 319. Needless to say, these acts are not inconsistant or mutually exclusive in the sense that the same property could not qualify for both. In fact, by

definition, all of petitioners' properties do qualify for both, or otherwise we would not be here.

The mere fact, however, that a piece of land can qualify under both acts for favorable tax assessment treatment, does not mean that the same piece of property may be assessed under both at the same time. Clearly, neither Act of Assembly so provides. Act 515 in 16 P.S. § 11943 provides that where application is made and the property qualifies the county shall covenant that the real property tax assessment for a period of five years will reflect the fair market value of the land as restricted by the covenant. Act 319 in sec. 3 provides that for general property tax purposes the value of the land which qualifies shall on the application of the owner and approval by the taxing authorities be that value which such land has for its particular use. Obviously, the purpose of each act is the same being to encourage the preservation of open spaces by favorable tax assessment for that purpose. Clearly Act 319 is more restrictive in nature and therefore, to a certain extent at least, further extends the policy of the law to preserve open space because by virtue of the greater restriction the more favorable tax assessment is secured. Obviously, it is the recognition of this additional benefit that caused petitioners herein to opt for the preferential assessment under Act 319 in spite of the fact that they had already covenanted under Act 515.

Quite obviously, the legislature in enacting Act 319 recognized and acknowledged the existence of Act 515 and made specific provision for the reassessment of properties so covenanted under Act 319. Section 10 of Act 319 provides in relevant part as follows:

"Any county which has covenanted with land-

owners of farm or forest land (under Act 515) may, at the landowner's option, *renegotiate* such agreements so as to make them conform to the provisions of this act as to preferential assessments." (Emphasis supplied.)

It is noteworthy that the legislature used the word "renegotiate." A favorable assessment under Act 515 requires the entry of a covenant between the property owner and the county as in the nature of a contract. Contracts are arrived at as a result of negotiation between the contracting parties which really mean a series or a range of discussions resulting in a final meeting of the minds on the terms of the contract. See Com. v. Safe Harbor Water Power Corp., 458 Pa. 134, 328 A. 2d 833 (1974). A preferential assessment under Act 319 likewise requires an agreement between the taxpayer and the taxing authorities. Section 4 of the Act provides that the County Board of Assessment Appeals shall have the responsibility to accept and process "applications" for preferential assessments. Sub-section (d) provides that the "approved application" for preferential assessment shall be recorded by the County Board of Assessment Appeals in the Office of the Recorder of Deeds.

Section 9 provides that the owner of the property upon which a preferential assessment is "sought" shall have the right to appeal. These provisions clearly demonstrate the requirement of some form of agreement between the taxpayer and the taxing authority. Therefore, the use of the word renegotiate in §10 of Act 319 becomes somewhat clearer. It contemplates that a property owner who is a party to a covenant under Act 515 may, with the agreement of the county taxing authorities, convert the assessment resulting from the covenant under

Act 515 into a preferential assessment under Act 319 as a result of a new negotiating process between the parties. We believe that the tenor of Act 319 contemplates a conversion to a preferential assessment rather than a new assessment in addition to the one rendered as a result of the covenant under Act 515. If dual assessments were contemplated there would be no need to refer to the process as a "renegotiation" but rather to provide only that a taxpayer under covenant to the county under Act 515 may likewise secure a preferential tax assessment under Act 319. The concept of dual tax assessments on the same property is indeed a novel one and we know of no other instance in which such has been effected. Therefore, in order to find such a legislative intent we believe that it should be explicitly so stated.

Finally on this question, we believe that the rollback or penalty provisions of each act clearly militate against the concept of dual tax assessments. Section 8 of Act 319 provides that if any tract of land preferentially assessed under Act 319 is removed from the category of land entitled to such assessment it shall be subject to taxes in an amount equal to the difference between the taxes paid on the basis of the preferential assessment and the taxes that would have been paid or payable "had that land been valued, assessed and taxed as other lands in the taxing district in the current tax year, . . . " No reference is made in this section, it being the only rollback section to a determination of the tax based upon a covenant under Act 515. Act 515 in 16 P.S. § 11946 provides that if the property owner or his successors or assign alters the use of the land while a covenant is in effect such alteration shall constitute a breach and the landowner

shall pay to the county as liquidated damages the difference between the real property taxes paid and "and the taxes which would have been payable absent the covenant." Obviously, Act 515 was enacted prior to Act 319 and therefore could not have contemplated in that language a preferential assessment under Act 319. Therefore, in each case, the rollback or liquidated damage provisions contemplate the payment of taxes as a penalty upon breach of the covenant in Act 515 or removal of the category of land preferentially assessed in Act 319 as the difference between the favorable tax rates as actually secured and the amounts of taxes which would have been paid had the properties received no preferential or favorable assessments whatsoever.

Whether or not the county solicitor is authorized to act for the county under Act 319, or whether the negotiations must be conducted by the County Board of Assessment Appeals as contended by petitioners, it is a matter of no moment in our opinion. The question of significance is not who acts for the taxing authorities but rather whether or not he acts correctly. It is not for us to dictate to the county government how it shall proceed to transact its business. We still adhere to the concept of separation of powers.

As regards the manner of effecting the renegotiations, we believe that it should be left to the taxing authorities to require or insist upon the execution of any reasonable form or number of documents for this purpose so long as the documents themselves and their contents conform with the requirements of the law.

Considering the foregoing, therefore, we declare herein that the class of petitioners as represented in this Declaratory Judgment Act may, if their prop-

erties qualify under the provisions of Act 319, have those properties preferentially assessed under said Act 319. If, however, such is effected, then that assessment represents the sole assessment on such property. We further declare that at the option of the County Board of Assessment Appeals, the county solicitor may represent the taxing authority for purposes of these renegotiations and the effectuation of the preferential tax assessment. Furthermore, the taxing authority may require any reasonable manner or type of documentation in order to effect the preferential assessment so long as the contents of those documents are in conformity with the law.

Finally, we do not believe that the provisions of § 7540 of the Judicial Code, the Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A. § 7540(b) denies us the jurisdiction in spite of the fact that a copy of the proceeding was not served upon each and every taxing authority with an interest herein. In reaching our conclusions we have considered the interests of those taxing authorities and were satisfied that they were adequately represented in this matter. In any event, in light of our conclusions herein, we seriously doubt that they would object.